## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| ANDY CHAVEZ, Individually and for Others Similarly Situated<br><br>v.<br><br>AVIATION PERSONNEL, LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Andy Chavez (Chavez) brings this class and collective action to recover unpaid overtime wages and other damages from Aviation Personnel, LLC (Aviation).

2. Aviation employed Chavez as one of its Hourly Employees (defined below) in Roswell, New Mexico, Mobile, Alabama, and Jacksonville, Florida.

3. Aviation pays Chavez and the other Hourly Employees by the hour.

4. Although Chavez and the other Hourly Employees regularly work more than 40 hours in a workweek, Aviation does not pay them overtime at the premium rate required by the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA") for hours worked in excess of 40 in a workweek.

5. Instead, Aviation pays Chavez and the other Hourly Employees "expense reimbursements" unrelated to expenses these employees incur that it intentionally excludes when calculating these employees' regular rates of pay for overtime purposes (Aviation's "expense reimbursement" pay scheme).

6. And Aviation pays Chavez and the other Hourly Employees non-discretionary bonuses that Aviation intentionally excludes when calculating their regular rates of pay for overtime purposes (Aviation's "bonus" pay scheme).

7. Aviation's expense reimbursement and bonus pay schemes violate the FLSA and NMMWA by depriving Chavez and the other Hourly Employees of overtime pay at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for hours worked in excess of 40 in a workweek.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Aviation because Aviation conducts substantial business activities in this District, including employing Chavez and other Hourly Employees.

11. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12. Specifically, Aviation employed Chavez and other Hourly Employees in this District.

13. Chavez and the other Hourly Employees worked more than 40 hours in a workweek in this District.

14. And Aviation did not pay Chavez and the other Hourly Employees at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for hours worked in excess of 40 in a workweek in this District.

## PARTIES

15. Chavez worked for Aviation as an Aircraft Mechanic from approximately February 2021 until January 2022, from approximately January 2023 until March 2023, and again in approximately September 2023.

16. Throughout his employment, Aviation paid Chavez on an hourly basis.

17. Throughout his employment, Aviation paid Chavez "expense reimbursements" and non-discretionary bonuses that Aviation intentionally excluded when calculating his regular rate of pay for overtime purposes.

18. Chavez's written consent is attached as **Exhibit 1**.

19. Chavez brings this class and collective action on behalf of himself and all other similarly situated employees who Aviation paid under its expense reimbursement and/or bonus pay scheme.

20. The FLSA Collective of similarly situated employees is defined as:

> **All hourly Aviation employees who Aviation paid (1) an expense reimbursement and/or (2) a bonus at any time in the past 3 years (the "FLSA Collective Members").**

21. Chavez also seeks to represent such a class under the NMMWA pursuant to FED. R. CIV. P. 23.

22. The New Mexico Class of similarly situated employees is defined as:

> **All hourly Aviation employees who Aviation paid (1) an expense reimbursement and/or (2) a bonus in New Mexico (the "New Mexico Class Members").**

23. The FLSA Collective Members and New Mexico Class Members are collectively referred to as the "Hourly Employees."

24. Aviation is a Texas corporation headquartered in Ft. Worth, Texas.

25. Aviation can be served through its registered agent: **Registered Agent Solutions, Inc., 206 S. Coronado Ave., Espanola, New Mexico 87532**.

## FLSA COVERAGE

26. At all relevant times, Aviation was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. At all relevant times, Aviation was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

28. At all relevant times, Aviation was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment—that have been moved in or produced for commerce.

29. At all relevant times, Aviation has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30. At all relevant times, the Hourly Employees were Aviation's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

31. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

32. Aviation uniformly paid the Hourly Employees "expense reimbursements" and/or non-discretionary bonuses that Aviation intentionally excluded when calculating these employees' regular rates of pay for overtime purposes.

33. As a result of Aviation's expense reimbursement and bonus pay schemes, the Hourly Employees (which, as noted above, include Chavez) did not receive overtime at the premium rates required by the FLSA.

34. Specifically, Aviation did not pay the Hourly Employees at least 1.5 times their regular rates of pay—based on *all* remuneration received—for all hours worked in excess of 40 in a workweek.

35. Aviation's expense reimbursement and bonus pay schemes therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

36. Aviation describes itself as "a staffing company catering to the aviation industry. We provide contract or direct employees to our clients for maintenance, production, and repair."[1]

37. Aviation is not, and does not purport to be, a common carrier.

38. To perform the services Aviation markets to its customers, Aviation employs personnel, including Chavez and the other Hourly Employees.

39. Aviation assigns these employees to provide services to companies across the country.

40. Aviation uniformly pays the Hourly Employees by the hour.

41. The Hourly Employees regularly work more than 40 hours a workweek.

42. But Aviation does not pay them overtime wages at the proper premium rate.

43. Instead, Aviation pays the Hourly Employees under its expense reimbursement and bonus pay schemes.

44. While exact locations, job titles, and job duties may differ, these employees are subject to the same or similar illegal pay practice(s) for similar work.

45. For example, Aviation employed Chavez as an Aircraft Mechanic from approximately February 2021 until January 2022 in Roswell, New Mexico, from approximately January 2023 until March 2023 in Mobile, Alabama, and again in approximately September 2023 in Jacksonville, Florida.

46. Chavez's primary duties included removing airplane jet engines, mounting these engines for repair, preparing these engines for shipment to other facilities, and reattaching the engines to airplanes.

47. Aviation informed Chavez prior to beginning his employment that he would be paid $26 an hour.

---

[1] https://aviationpersonnel.net/for-employers/ (last visited April 30, 2024).

48. Chavez was an hourly employee of Aviation.

49. Aviation purported to pay Chavez $10.50 an hour base rate, while he worked in Roswell, NM.

50. Chavez reported his hours worked to Aviation.

51. Chavez typically worked approximately 10 to 11 hours a day and 5 to 6 days per week (50 to 66 hours a workweek).

52. Aviation's records reflect the hours Chavez worked each week.

53. Despite knowing Chavez regularly worked overtime, Aviation did not pay him overtime wages at the required premium rate.

54. Chavez did not receive the required "time and a half" overtime premium for hours he worked in excess of 40 in a workweek.

55. Instead, Aviation paid Chavez under its expense reimbursement and bonus pay schemes.

56. Aviation used its expense reimbursement and bonus pay schemes to mask its overtime compensation violations and give the appearance of paying overtime in compliance with the FLSA and NMMWA.

57. Specifically, Aviation utilizes multiple "overtime" rates, which do not equal 1.5 times Chavez's regular rate of pay.

58. Aviation paid Chavez a taxable "regular earnings" rate of $10.50 an hour.

59. Aviation paid Chavez a taxable "overtime earnings" rate of $15.75 an hour.

60. Aviation paid Chavez a taxable "overtime – AT earnings" rate of $26 an hour.

61. But these labels are inaccurate, just as the "expense reimbursement" label is inaccurate.

62. Aviation labels a large portion of Chavez's earnings each pay period as an "expense reimbursement."

63. But Aviation never required or requested that Chavez provide an expense report or receipts to substantiate the expense reimbursements paid by Aviation.

64. Aviation uses the "expense reimbursement" label even though it was paid based on the number of hours Chavez worked.

65. Aviation's Business Expense Qualification Agreement states the "expense reimbursement" is paid based upon the number of hours worked by Chavez:

> Aviation Personnel employees, if applicable, may be eligible for a maximum business expense reimbursement of $1,365.00 per week – based upon a seven day travel / work week. The business expense reimbursement is based upon an eight hour day. If the employee works fewer than two hours for the calendar day, no reimbursement for away from home expenses will be paid.

66. During each weekly pay period that Chavez worked over 40 hours, the sum of Chavez's "expense reimbursement," "regular earnings," "overtime earnings," and "overtime – AT earnings" – his total compensation – divided by the total hours Chavez worked in the pay period equals $26.

67. Thus, Chavez's "taxable" earnings, overtime included, plus the "expense reimbursement" compensate him at the $26 an hour rate – the payrate Aviation promised he would receive.

68. For example, during the pay period ending May 23, 2021, Chavez worked 61.75 hours, and Aviation ostensibly paid him $10.50 an hour for his first 40 hours worked, $15.75 for 16 "overtime" hours worked, $26 an hour for 5.75 "overtime – AT" hours worked, plus a $784 "expense reimbursement":

7

|  | Hours | Amount |
|---|---|---|
| *** EARNINGS *** | | |
| Regular | 40.00 | 420.00 |
| Overtime | 16.00 | 252.00 |
| Retentn Bonus | 0.00 | 0.00 |
| Overtime - AT | 5.75 | 149.50 |
| *** TAX DEDUCTIONS *** | | |
| Federal W/H | | 33.88 |
| Social Security Tax | | 50.93 |
| Medicare Tax | | 11.91 |
| *** DEDUCTIONS *** | | |
| Travel Pay | | 0.00 |
| Exp Reimb | | 784.00- |
| *** DIRECT DEPOSITS *** | | |
| Wells Fargo    ***** | | 1,508.78 |

69. Between his "taxable" wages and his so-called "expense reimbursement" Chavez earned $1,605.50.

70. Chavez's $1,605.50 earnings divided by his 61.75 hours worked equals $26 an hour.

71. Chavez's actual "regular rate" was at least $23.20 an hour during this workweek. 29 U.S.C. § 207(e).

72. Thus, Chavez should have been paid at least $34.80 for each hour he worked in excess of 40 during this workweek.

73. But Chavez was only paid $18.46 for each hour he worked in excess of 40 during this workweek.

74. And Aviation paid Chavez a non-discretionary "retention bonus" of $100 for each month he remained employed by Aviation.

75. For example, Chavez received his third retention bonus during the pay period ending May 2, 2021:

|  | Hours | Amount | YTD |
|---|---|---|---|
| *** EARNINGS *** | | | |
| Regular | 40.00 | 420.00 | 5,040.00 |
| Overtime | 16.00 | 252.00 | 2,016.00 |
| Retentn Bonus | 0.00 | 100.00 | 300.00 |
| Overtime - AT | 10.00 | 260.00 | 1,196.00 |
| *** TAX DEDUCTIONS *** | | | |
| Federal W/H | | 58.26 | 282.96 |
| Social Security Tax | | 63.98 | 530.22 |
| Medicare Tax | | 14.96 | 124.00 |
| *** DEDUCTIONS *** | | | |
| Travel Pay | | 0.00 | 200.00- |
| Exp Reimb | | 784.00- | |

8

76. Therefore, Chavez's actual "regular rate" was at least $23.89 an hour during this workweek. 29 U.S.C. § 207(e).

77. Thus, Chavez should have been paid at least $35.84 for each hour he worked in excess of 40 during this workweek.

78. But Chavez was only paid $26 for each hour he worked in excess of 40 during this workweek.

79. Aviation intentionally excluded Chavez's "expense reimbursement" and retention bonus when calculating his regular rate of pay, which resulted in Chavez not receiving overtime premium wages at the required rate for hours worked in excess of 40 in a workweek.

80. And Aviation pays the other Hourly Employees according to the same pay schemes.

81. Like Chavez, Aviation pays the Hourly Employees on an hourly basis.

82. And Aviation requires the other Hourly Employees to report their hours worked.

83. Thus, just as Aviation maintains records of the hours Chavez worked, it maintains records of the hours worked by the other Hourly Employees.

84. Aviation's records show the Hourly Employees regularly work more than 40 hours a workweek.

85. Every Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years.

86. Indeed, like Chavez, the Hourly Employees typically work 10-11 hours a day for 5 to 6 days a week (or 50-66 hours a workweek).

87. But despite knowing Chavez and the Other Hourly Employees regularly work overtime, Aviation does not pay them overtime wages at the proper premium rate.

88. Instead, Aviation pays them "expense reimbursements" and/or bonuses that Aviation intentionally excludes when calculating these employees' regular rates of pay for overtime purposes in willful violation of the FLSA and in violation of the NMMWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

89. Chavez incorporates all other paragraphs by reference.

90. Chavez brings his FLSA and NMMWA claims on behalf of himself and the other Hourly Employees.

91. The Hourly Employees are uniformly victimized by Aviation's expense reimbursement and/or bonus pay schemes, which are in willful violation of the FLSA and in violation of the NMMWA.

92. Other Hourly Employees worked with Chavez and indicated they were paid in the same manner, performed similar work, and were subject to Aviation's same expense reimbursement and bonus pay schemes.

93. Based on his experiences, Chavez is aware Aviation's illegal expense reimbursement and bonus pay schemes were imposed on the Hourly Employees.

94. The Hourly Employees are similarly situated in the most relevant respects.

95. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

96. The only *relevant* job duties are whether the Hourly Employees worked more than 40 hours in a week and received "expense reimbursements" and/or bonuses (which, by definition, they did).

97. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

98. Rather, Aviation's uniform expense reimbursement and bonus pay schemes render Chavez and the other Hourly Employees similarly situated for the purposes of determining their right to overtime pay.

99. Aviation's records reflect the number of hours worked each week by the Hourly Employees.

100. Aviation's records also show the Hourly Employees were paid "expense reimbursements" and/or bonuses.

101. Aviation's records also reflect that its calculation of the Hourly Employees' regular rates for overtime purposes failed to include the "expense reimbursements" and bonuses it paid to these employees.

102. Therefore, Aviation undercalculated the Hourly Employees' overtime rates of pay.

103. And Aviation underpaid the Hourly Employees for each hour they worked in excess of 40 in a workweek.

104. The back wages owed to Chavez and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

105. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Aviation's records, and there is no detraction from the common nucleus of liability facts.

106. Therefore, the issue of damages does not preclude class or collective treatment.

107. Chavez's experiences are therefore typical of the experiences of the Hourly Employees.

108. Chavez has no interest contrary to, or in conflict with, the Hourly Employees that would prevent class or collective treatment.

109. Like each Hourly Employee, Chavez has an interest in obtaining the unpaid wages owed under federal and/or New Mexico law.

110. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

111. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Aviation will reap the unjust benefits of violating the FLSA and NMMWA.

112. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

113. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

114. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

115. Among the common questions of law and fact are:

   a. Whether Aviation applied its expense reimbursement pay scheme uniformly to the Hourly Employees;

   b. Whether Aviation applied its bonus pay scheme uniformly to the Hourly Employees;

   c. Whether Aviation intentionally excluded the Hourly Employees' "expense reimbursements" and/or bonuses when calculating their regular rates of pay for overtime purposes in violation of the FLSA and/or NMMWA;

   d. Whether Aviation's expense reimbursement pay scheme deprived Chavez and the Hourly Employees of the premium overtime wages they are owed under the FLSA and/or NMMWA;

   e.  Whether Aviation's bonus pay scheme deprived Chavez and the Hourly Employees of the premium overtime wages they are owed under the FLSA and/or NMMWA;

   f.  Whether Aviation's decision not to pay Chavez and the Hourly Employees overtime wages at the proper premium rate (based on *all* remuneration received) was made in good faith; and

   g.  Whether Aviation's FLSA violations were willful.

116. Chavez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

117. As part of its regular business practices, Aviation intentionally, willfully, and repeatedly violated the FLSA with respect to the Hourly Employees.

118. Aviation's illegal expense reimbursement and bonus pay schemes deprived Chavez and the other Hourly Employees of the premium overtime wages they are owed under federal and/or New Mexico law.

119. There are many similarly situated Hourly Employees who have been denied overtime pay at the proper premium rate in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

120. This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

121. The Hourly Employees are known to Aviation, are readily identifiable, and can be located through Aviation's business and personnel records.

### AVIATION'S WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

122. Chavez incorporates all other paragraphs by reference.

123. Aviation knew it was subject to the FLSA's overtime provisions.

124. Aviation knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for all hours worked after 40 in a workweek.

125. Aviation knew each Hourly Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required these workers to record their hours worked.

126. Aviation knew the Hourly Employees were its hourly employees.

127. Aviation knew it paid the Hourly Employees on an hourly basis.

128. Aviation knew it paid the Hourly Employees an hourly rate plus "expense reimbursements" and/or bonuses.

129. Aviation knew it based the Hourly Employees' overtime rates solely on their "taxable" base hourly rates.

130. Aviation intentionally excluded the Hourly Employees' "expense reimbursements" and/or bonuses when calculating their regular rates of pay for overtime purposes.

131. Aviation's expense reimbursement and bonus pay schemes were designed to mask its violations of the FLSA.

132. Aviation knew it was not a common carrier.

133. Nonetheless, Aviation intentionally excluded the Hourly Employees' "expense reimbursements" and/or bonuses when calculating these employees' regular rates of pay for overtime purposes.

134. Aviation's decision to exclude the Hourly Employees' "expense reimbursements" and/or bonuses when calculating their regular rates of pay for overtime purposes was neither reasonable, nor was the decision to exclude these employees' "expense reimbursements" and/or bonuses when calculating their regular rates of pay for overtime purposes made in good faith.

135. Likewise, Aviation's failure to pay the Hourly Employees overtime wages at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime wages at the proper premium rate made in good faith.

136. Aviation knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

137. Indeed, Aviation has been previously sued for excluding remuneration from employees' regular rate of pay calculations. *See, Jovet v. Aviation Personnel, LLC*, Case No. 1:16-cv-02220-CAB (N.D. Ohio).

138. Aviation knowingly, willfully, and/or in reckless disregard carried out these illegal "expense reimbursement" and bonus pay schemes that systematically deprived the Hourly Employees of premium overtime wages for the hours they worked in excess of 40 in a workweek in violation of the FLSA.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

139. Chavez incorporates all other paragraphs by reference.

140. Chavez brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

141. Aviation violated, and is violating, the FLSA by employing non-exempt employees (Chavez and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for the hours they worked after 40 in a workweek. 29 U.S.C. § 207(a).

142. Aviation's unlawful conduct harmed Chavez and the other FLSA Collective Members by depriving them of overtime wages at the proper premium rate they are owed.

15

143. Accordingly, Aviation owes Chavez and the FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

144. Because Aviation knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Aviation owes these wages for at least the past 3 years.

145. Aviation is liable to Chavez and the FLSA Collective Members for an amount equal to all unpaid overtime as liquidated damages.

146. Chavez and the FLSA Collective Members are also entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
### (NEW MEXICO CLASS)

147. Chavez incorporates all other paragraphs by reference.

148. Chavez brings his NMMWA claim on behalf of himself and the New Mexico Class Members pursuant to FED. R. CIV. P. 23.

149. Aviation's conduct violates the NMMWA. *See* N.M.S.A. § 50-4-20, *et seq*.

150. At all relevant times, Aviation was subject to the NMMWA because Aviation was (and is) an "employer" within the meaning of the NMMWA. N.M.S.A. § 50-4-21(B).

151. At all relevant times, Aviation employed Chavez and the New Mexico Class Members as its covered "employees" within the meaning of the NMMWA. N.M.S.A. § 50-4-21(C).

152. The NMMWA requires employers, like Aviation, to pay non-exempt employees, including Chavez and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for all hours worked over 40 in any 7-day workweek. N.M.S.A. § 50-4-22(D).

153. Chavez and the other New Mexico Class Members are entitled to overtime pay under the NMMWA.

154. Aviation violated, and is violating, the NMMWA by employing non-exempt employees (Chavez and the other New Mexico Class Members) for weeks longer than 40 hours without paying overtime wages – based on *all* remuneration received – for hours worked over 40 in a workweek. *See* N.M.S.A. § 50-4-22(D).

155. Aviation's improper practices at issue were (and are) part of a continuing course of conduct, entitling Chavez and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

156. Aviation's unlawful conduct harmed Chavez and the other New Mexico Class Members by depriving them of the premium overtime wages they are owed.

157. Accordingly, Chavez and the other New Mexico Class Members are entitled to recover their unpaid overtime wages in amount equal to 1.5 times their regular rates of pay for their hours worked over 40 in a workweek; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

### JURY DEMAND

158. Chavez demands a trial by jury.

### RELIEF SOUGHT

Chavez, individually and on behalf of the Hourly Employees, seeks the following relief:

    a.    An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

    b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

    c.    An Order appointing Chavez and his counsel to represent the interests of the FLSA Collective and New Mexico Class;

    d.    An Order pursuant to Section 16(b) of the FLSA finding Aviation liable for unpaid overtime wages due to Chavez and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

    e.    An Order finding Aviation liable to Chavez and the New Mexico Class Members for unpaid overtime wages owed under the NMMWA, treble damages in an amount equal to two times their unpaid wages;

    f.    An Order awarding attorneys' fees, costs, and expenses available under the FLSA and NMMWA;

    g.    A Judgment against Aviation awarding Chavez and the Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA and/or NMMWA;

    h.    An award of pre- and post-judgment interest at the highest rate allowable by law; and

    i.    All such other and further relief to which Chavez and the Hourly Employees may show themselves to be justly entitled.

Dated: May 1, 2024

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, LLP**

By: */s/ Justin R. Kaufman*
Justin R. Kaufman
Philip M. Kovnat
505 Cerrillos Road, Suite A209
Santa Fe, NM 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
pkovnat@dpslawgroup.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR CHAVEZ AND THE HOURLY EMPLOYEES**